UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PATRICIA WESTRICH-JAMES,            )
                                    )
            Plaintiff,              )
                                    )          CIVIL ACTION NO.
VS.                                 )
                                    )          3:07-CV-1329-G
DALLAS MORNING NEWS, INC.           )
f/k/a DALLAS MORNING, NEWS, L.P.,   )
ET AL.,                             )
                                    )
            Defendants.             )

### MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment of defendants The Dallas

Morning News, Inc. ("TDMN") and Belo Corp. ("Belo") (docket entry 61).  For the

reasons set forth below, the motion is granted in part and denied in part.

### I.  BACKGROUND

### A.  Factual Background

Westrich-James served as a manager for TDMN.  Amended Complaint

("Complaint") ¶ 9 (docket entry 19).  On September 13, 2005, Westrich-James

stopped working and went on medical leave.  Plaintiff's Response to Defendants'

Motion for Summary Judgment ("Response") ¶ 24 (docket entry 69).  On

September 12, 2006, after Westrich-James failed to return from her leave of absence

within one year from her leave date, her employment was administratively terminated

in accordance with a neutral absence leave policy.  Plaintiff's Deposition 245-246,

*located in* Defendants' Appendix in Support of Defendants' Motion for Summary

Judgment and Brief in Support ("Defendants' Appendix") at 60-61 (docket entry 63).

At the time of her termination, Westrich-James was over the age of 60, suffered from

Parkinson's Disease and depression, and had filed a charge of discrimination with the

Equal Employment Opportunity Commission ("EEOC") for violations of the Equal

Pay Act ("EPA"), 29 U.S.C. § 206(d), the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12101-213, the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §§ 1140, and Chapter 21 of the Texas Labor Code ("Chapter 21"), TEX.

LABOR CODE §§ 21.001-21.556.  Complaint ¶ 9.

Westrich-James alleges that she was subjected to a hostile work environment

and discriminatorily discharged based on a disability in violation of the ADA, 29

U.S.C. § 206(d), and Chapter 21 of the Texas Labor Code.  *Id*. ¶ 20.  Westrich-James

also avers she was subjected to discriminatory pay practices based on her gender in

violation of the EPA and Chapter 21.  *Id.* ¶¶ 22-31.  In addition, the plaintiff asserts

that she was retaliated against, in violation of the ADA and Chapter 21, for having

requested medical leave and accommodations for her disabilities and for filing an

- 2 -

EEOC charge. *Id.* ¶¶ 19-20, 30-31.  Finally, Westrich-James alleges that TDMN

discriminated against her in violation of Section 510 of ERISA.  *Id.* ¶¶ 32-37.

The factual predicates for Westrich-James's claims are as follows.  In

September 2003, Westrich-James was diagnosed with Parkinson's Disease.  Appendix

in Support of Plaintiff's Motion for Summary Judgment and Brief in Support

("Plaintiff's Appendix") at 166 (docket entry 69-2).  She was also prescribed Zoloft

for depression.  *Id.* at 185.  On August 13, 2004, Westrich-James notified her

immediate supervisor, Nikki Gladys, that she had Parkinson's Disease.  Response ¶ 5.

Westrich-James claims that after this notification, Gladys created a hostile work

environment by doing the following: Gladys documented one of Westrich's emails

that was allegedly incoherent and contained typos; Gladys reported this email to

Human Resources personnel, even after being advised by Westrich-James that the

email had been written when Westrich-James was ill and taking cold medicine;

Gladys instructed Westrich-James to get "tough" with her direct reports, but then

would criticize and overrule Westrich-James's decision;[1]  Gladys gave Westrich-James

a "needs improvement" performance rating on July 1, 2005, in spite of the fact that

Westrich-James's team had exceeded sales goals for six consecutive months and had

the second highest sales of the four zones; Gladys presented the review in a "very

---

[1]       The only example cited by Westrich-James is when Gladys overruled
Westrich-James's decision to deny first quarter bonuses to two account executives
because they failed to keep proper records and paperwork.

- 3 -

intimidating manner" and Westrich-James developed the fear that Gladys was "trying to force her termination;" Gladys urged Westrich-James to accept a position as an account executive in the Southlake office (a demotion for Westrich-James in that she would no longer be managing a team); and Gladys interrupted Westrich-James in a derisive tone at a managers' meeting when Westrich-James stammered (a symptom associated with Parkinson's Disease) while reporting on her team's sales. *Id*. ¶¶ 5-12, 21. Westrich-James maintains that these incidents caused her Parkinson's Disease symptoms to worsen. Complaint ¶ 11. Westrich-James took a medical leave on September 13, 2005. Response ¶ 24. When she attempted to return to her position, Westrich-James was told she could not return. Complaint ¶ 14. This refusal caused her additional emotional distress and caused her medical symptoms to worsen. *Id.* Westrich-James then presented the defendants with a medical release. *Id.* ¶ 15. Westrich-James contends that the defendants did not accept the release, refused her requests for reasonable accommodations and a hostility-free work environment, harassed her, and then terminated her employment under a neutral absence-leave policy because she did not timely present a medical release. *Id.* ¶¶ 15, 34. Westrich-James's annual base salary was $24,000 and $33,000 less than two male zone managers, Roger Castillo and Bill Bradley, respectively. Response ¶ 19.

On August 1, 2007, Westrich-James filed this suit. On March 28, 2008, she amended her complaint, alleging that the defendants' termination of her employment

- 4 -

violated the ADA, Chapter 21, the EPA, and ERISA.  *See generally* Complaint.  The

defendants previously sought dismissal under Rule 12(b)(6) of Westrich-James's

claims that they had breached fiduciary duties under ERISA.  By memorandum

opinion and order of March 25, 2009, this court dismissed with prejudice Westrich-

James's breach of fiduciary duty claim against TDMN.  The court dismissed without

prejudice Westrich-James's breach of fiduciary duty claim against Belo and granted

Westrich-James twenty days to amend her complaint to replead, with more

particularity, her claim against Belo for breach of fiduciary duty under ERISA.

Because Westrich-James did not timely replead this claim, the court dismissed this

claim with prejudice on April 17, 2009.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court

show that no genuine issue exists as to any material fact, and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).[2]  The movants makes

such a showing by informing the court of the basis of their motion and by identifying

the portions of the record which reveal there are no genuine material fact issues.

---

[2]     The disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

*Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(a), (c).

Once the movants make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the nonmovant, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Summary judgment in favor of the movants is

- 6 -

proper if, after adequate time for discovery, the motion's opponent fails to establish

the existence of an element essential to her case and as to which she will bear the

burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

B.  <u>Legal Standards</u>

1.  *ADA*

In a case involving disparate treatment under the ADA, a plaintiff must satisfy

her *prima facie* burden by showing:  (1) she suffers from a disability, (2) that she was

otherwise qualified to perform her job, (3) she was subject to an adverse employment

action; and (4) she was either replaced by someone who was not disabled or that

nondisabled employees were treated more favorably under similar circumstances.

*Daigle v. Liberty Life Insurance Company*, 70 F.3d 394, 396 (5th Cir. 1995).  If a

plaintiff establishes a *prima facie* case, a presumption of discrimination arises which

the defendant may then rebut merely by articulating a legitimate, non-discriminatory

reason for the discharge.  *Id*.  Once a defendant articulates a legitimate, non-

discriminatory rationale for the adverse action, the plaintiff must offer sufficient

evidence to create a genuine issue of material fact that (i) the employer's reason is not

true but a pretext for discrimination (pretext alternative); or (ii) the employer's

reason, while true, is only one of the reasons for its conduct and another motivating

factor is the plaintiff's protected characteristic (mixed motives alternative).  *Id.* at

396; *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (per curiam).  This

inquiry into whether a defendant's articulated rationale can be classified as pretext or mixed motives takes place only after a plaintiff has met her four-part *prima facie* burden described above. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341(5th Cir. 2005). An employee's subjective belief that she suffered an adverse employment action as a result of discrimination, without more, is insufficient to survive a summary judgment motion. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).

## 2. *Texas Labor Code*

One of the stated purposes of the Texas Labor Code is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments." TEX. LABOR CODE ANN. § 21.001(3) (Vernon 2006). The provisions of the Texas Labor Code applicable in this case mirror the anti-discrimination and anti-retaliation provisions of the ADA. Given the similarities, courts apply analogous federal case law when interpreting the Texas Labor Code. *Quantum Chemical Corporation v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Therefore, the familiar *McDonnell Douglas* burden-shifting analysis is properly employed in employment discrimination claims brought under the Texas Labor Code. See *id.*; *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Daigle*, 70 F.3d at 396 (the Fifth Circuit's application and formulation of the *McDonnell Douglas* analysis). Under this burden-shifting scheme, the plaintiff is first charged with setting forth a *prima facie* case of discrimination. *Texas Department of Community Affairs v. Burdine*,

- 8 -

450 U.S. 248, 252-54 (1981).  If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  *Id.*  Should the defendant carry this burden, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  *Id.*  Therefore, the legal standards set out above for claims under the ADA are equally applicable to Westrich-James's claims under the Texas Labor Code.

3. *Equal Pay Act*

Section 206(d) of the Equal Pay Act provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.
> . . .

29 U.S.C. § 206(d)(1).

To establish a *prima facie* case under the EPA, a plaintiff must demonstrate that (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she

was paid less than members of the opposite sex providing the basis for comparison. *Jones v. Flagship International*, 793 F.2d 714, 722-23 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987). A plaintiff need not show that her job duties were identical to those of higher paid male employees, only that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal." *Id*.

When a plaintiff succeeds in establishing a *prima facie* case, the burdens of production and persuasion shift to the employer to demonstrate one of the four affirmative defenses specified by the EPA. *Siler-Khodr v. University of Texas Health Science Center San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001), *cert. denied*, 537 U.S. 1087 (2002). In other words, the burden shifts to the employer once a plaintiff shows she was paid less than a male who was performing substantially the same job. The EPA provides exceptions, sometimes referred to as affirmative defenses, for disparate wage payments made pursuant to: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality; or (4) a differential based upon any factor other than sex. *Id.*

4. *Section 510 of ERISA*

Section 510 is ERISA's prohibition on retaliation. It reads:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under [ERISA]. . . .

29 U.S.C. § 1140.

To succeed on a Section 510 claim, a plaintiff must prove that she was fired either (1) in retaliation for exercising a right under ERISA or (2) for the purpose of prohibiting her from attaining benefits she would otherwise have been entitled to under an employee benefit plan. *Holtzclaw v. DSC Communications Corporation*, 255 F.3d 254, 260 (5th Cir. 2001). A plaintiff must show that the defendants had some "specific intent to violate ERISA." *Clark v. Resistoflex Company*, 854 F.2d 762, 770 (5th Cir. 1988) (quoting *Gavalik v. Continental Can Company*, 812 F.2d 834, 851 (3rd Cir.), *cert. denied*, 484 U.S. 979 (1987)). "[W]here the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him." *Clark*, 854 F.2d at 771.

C. Application

1. *Alleged Violations of the ADA*

In this case, Westrich-James brings three claims under the ADA. First, Westrich-James claims she was subjected to a hostile work environment and discriminatorily discharged based on a disability, in violation of the ADA. Second, Westrich-James claims she was retaliated against, in violation of the ADA, for having requested medical leave and accommodations for her disabilities and for filing a

discrimination charge with the EEOC.  Third, Westrich-James claims that the defendants failed to afford accommodations for her disabilities, as required by the ADA.

Westrich-James has raised a genuine issue of material fact with regard to her ADA claims.  Defendants contend that they are entitled to summary judgment on Westrich-James's ADA claims because Westrich-James failed to present a timely medical release from her doctor and was therefore administratively terminated in accordance with a neutral absence leave policy.  However, Westrich-James maintains that she did in fact present to Sandra Scott on November 30, 2005 a medical release from Dr. Cox authorizing her return to work.  Westrich-James asserts that Scott refused to accept the medical release.  The defendants have not offered any explanation of this incident.  Therefore, Westrich-James's factual showing on this issue, essential to defendants' argument, is sufficient to defeat summary judgment.

2.  *Alleged Violations of the Texas Labor Code*

Westrich-James also brings four claims under the Texas Labor Code.  First, Westrich-James claims she was subjected to a hostile work environment and discriminatorily discharged for disability, in violation of the Texas Labor Code.  Second, Westrich-James claims she was subjected to discriminatory pay practices based on her gender, in violation of the Texas Labor Code.  Third, Westrich-James claims she was retaliated against, in violation of the Texas Labor Code, for having

requested medical leave and accommodations for her disabilities and for filing a

discrimination charge with the EEOC.   Fourth, Westrich-James claims that the

defendants failed to afford reasonable accommodations for her disabilities, as required

by the Texas Labor Code.

In this case, Westrich-James has neither quoted a single word nor cited a single

section, subchapter, or chapter from the Texas Labor Code.   *See* Complaint;

Response.   All of Westrich-James's references to the Texas Labor Code are generic.

All but three of these references appear after -- and in tandem with -- references to the

ADA.   *See* Complaint; Response.   Given this, it is appropriate to deny the defendants'

motion for summary judgment as to all of Westrich-James's claims under the Texas

Labor Code because they are associated with and tied to her ADA claims.   The Texas

Labor Code -- at least the portions that it can reasonably be inferred Westrich-James

relies on (given that she has provided no more specific reference) -- mirrors the anti-

discrimination and anti-retaliation provisions of the ADA.

### 3. *Alleged Violations of the Equal Pay Act*

Westrich-James claims she was subjected to discriminatory pay practices based

on her gender, in violation of the Equal Pay Act.   Westrich-James's only factual

support for this claim is that she was paid less than two male employees whom she

claims are comparators.   Complaint ¶ 29.   Westrich-James does not meet her *prima*

*facie* burden under the case law interpreting the EPA.   Although Westrich-James did

identify two more highly paid male managers -- Bradley and Castillo -- she does not

show that the "skill, effort and responsibility" required of their jobs is in any way

"substantially equal" to hers.  In fact, the evidence presented indicates the contrary –

Castillo and Bradley worked in different, and more difficult, geographic zones than

Westrich-James; Castillo and Bradley had additional special duties and

responsibilities than Westrich-James on account of their different zones (Castillo and

Bradley were unsupervised managers of their respective zones while Westrich-James

was closely supervised and assisted in her zone); Castillo managed a historically

difficult zone and was tasked with turning the zone around; Castillo also was charged

with developing and being the first zone to launch a new tabloid style publication;

Bradley managed the fastest growing zone, a zone ultimately split into two; Bradley

was responsible for training account executives, developing sales platforms, and

launching a publication guide.  Therefore, Westrich-James's allegation that Castillo

and Bradley were comparators employed in jobs requiring "substantially equal" skills,

effort, and responsibility is unfounded.  From the pleadings and depositions on file it

is apparent that each zone has its own unique revenue amounts and revenue goals --

differences that translate into substantial differences in employee responsibilities and

salary.  The affidavits and deposition testimony indicate that, in this organization and

industry, salaries fluctuate greatly with revenue goals and geographic area.  The record

indicates that Westrich-James was paid more than some other male employees -- *e.g.*,

Willard Thompson, who held a similar job to Westrich-James but was paid less. Given that Westrich-James has alleged gender discrimination based only on salary information for two male employees in different zones with substantially different responsibilities, she has not shown that they are in fact comparators and has thus failed to meet make out a *prima facie* case. Therefore, the defendants' motion for summary judgment on Westrich-James's Equal Pay Act claims is granted.

### 4. *Alleged Violation of ERISA*

Westrich-James claims she was discriminated against in violation of Section 510 of ERISA. Complaint ¶ 35. The court has already determined that Westrich-James has properly pleaded her Section 510 ERISA claim. Memorandum Opinion and Order of March 25, 2009 at 8 (docket number 49). Nevertheless, although properly pleaded, Westrich-James has not raised a fact issue sufficient to defeat the defendants' motion for summary judgment on the Section 510 ERISA claim. Additionally -- and contrary to the Westrich-James's contention -- the defendants have properly moved for summary judgment on this claim as evidenced by the following language in their motion: "Plaintiff alleges that TDMN discriminated against her in violation of Section 510 of [ERISA]. However, there is no genuine issue of material fact with respect to any of Plaintiff's claims and Defendants are entitled to judgment as a matter of law." Defendants' Brief in Support of Motion for Summary Judgment at 1 (docket entry 62). Westrich-James testified she was aware

of no facts that she was retaliated against or denied a benefit to which she was otherwise entitled.  Plaintiff's Deposition 411-414 at Defendants' Appendix 151-154. Moreover, Westrich-James has presented no evidence that the defendants possessed any of the"specific intent to violate ERISA" required by the case law.  Consequently, Westrich-James has failed to offer evidence sufficient to make a *prima facie* case on her ERISA claim; therefore, defendants are entitled to judgment as a matter of law, and judgment will be entered for the defendants on this claim.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is **DENIED** as to the ADA claims, **DENIED** as to the Texas Labor Code claims, **GRANTED** as to the Equal Pay Act claims, and **GRANTED** as to the ERISA claims.

**SO ORDERED**.

September 17, 2012.

**A. JOE FISH**
**Senior United States District Judge**

- 16 -